Matter of Militano v DiNapoli (2023 NY Slip Op 04169)

Matter of Militano v DiNapoli

2023 NY Slip Op 04169

Decided on August 3, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:August 3, 2023

535812
[*1]In the Matter of Alexis Militano, Petitioner,
v
Thomas P. DiNapoli, as State Comptroller, et al., Respondents.

Calendar Date:June 7, 2023

Before:Lynch, J.P., Clark, Pritzker, Reynolds Fitzgerald and Fisher, JJ.

Pasternack Tilker Ziegler Walsh Stanton & Romano LLP, Brentwood (Shannon L. Dechent-Montenegro of counsel), for petitioner.
Letitia James, Attorney General, Albany (Kevin C. Hu of counsel), for respondents.

Lynch, J.P.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Comptroller denying petitioner's application for accidental disability retirement benefits.
In 2014, petitioner, a police officer, applied for accidental disability retirement benefits, alleging that he was permanently incapacitated from the performance of his job duties as a result of injuries to his back, both legs, left wrist, neck and head sustained in a motor vehicle accident while on duty on May 9, 2006. After the application was initially denied, he requested a hearing. At the outset of the hearing, respondent New York State and Local Police and Fire Retirement System conceded that petitioner was permanently incapacitated and that the May 2006 incident was an accident within the meaning of the Retirement and Social Security Law. Following the hearing, the Hearing Officer denied the application on the ground that the 2006 accident was not the proximate cause of petitioner's disability. Respondent Comptroller affirmed that determination, and this CPLR article 78 proceeding ensued.
We confirm. "To be eligible for accidental disability retirement benefits, petitioner's incapacitation must be the natural and proximate result of an accident sustained while in service" (Matter of Chomicki v Nitido, 145 AD3d 1337, 1338 [3d Dept 2016] [internal quotation marks, brackets and citations omitted]; see Matter of Trager v New York State Comptroller, 188 AD3d 1405, 1406 [3d Dept 2020], lv denied 36 NY3d 910 [2021]). "Where, as here, there is conflicting medical evidence, the Comptroller is authorized to resolve the conflicts and to credit one expert's opinion over that of another so long as the credited expert articulates a rational and fact-based opinion founded upon a physical examination and review of the pertinent medical records" (Matter of Pufahl v Murray, 111 AD3d 1050, 1051 [3d Dept 2013] [internal quotation marks and citations omitted]; see Matter of Hanon v DiNapoli, 171 AD3d 1431, 1433 [3d Dept 2019]).
Petitioner testified that he suffered injuries to his head, left wrist, neck and back when his patrol car was struck by another vehicle on May 9, 2006. According to petitioner, he was out of work due to these injuries for six months. Petitioner then returned to work on light duty for a short time before returning to full duty. Petitioner further testified that, in January 2012, he suffered an injury to his right knee when he slipped while investigating a burglary.[FN1] The knee injury required surgery in 2013 and petitioner testified that he has needed to use crutches ever since. Petitioner's physician, Satish Modugu, who began treating petitioner in March 2012, testified that the injuries to petitioner's back sustained in the 2006 accident resulted in a permanent incapacity.[FN2] In support, Modugu cited to the results of an MRI of petitioner's lumbar spine conducted on May 16, 2006 that [*2]showed disc pathology at L4-5, an MRI conducted in 2013 that showed a disc herniation at L4-5 and petitioner's history of complaints of back pain in opining that petitioner is permanently disabled due to the 2006 injuries to his back. In reaching his opinion, Modugu disregarded the results of an electromyography (EMG) conducted on June 22, 2006 that showed no denervation to petitioner's back, concluding that the EMG was done too soon after the accident to detect denervation.[FN3]
Jeffrey Meyer, an orthopedic surgeon retained by the Retirement System, conducted a physical examination of petitioner in May 2017 and reviewed his medical records. Although Meyer agreed that petitioner was permanently disabled from performing his job duties, he concluded that the disability was not causally-related to the May 2006 accident. According to Meyer, the May 16, 2006 MRI showed only a mild disc desiccation at L4-5, which he opined was the result of normal degeneration, and there was no indication on the MRI of an acute injury to the spine. Meyer further opined that the 2013 MRI reflected a bulging disc at L4-5 that was the natural progression of degenerative disc disease, that was neither trauma induced nor disabling. Meyer also relied on the results of the June 2006 EMG, which he found to be essentially normal, stating that the 42-day gap between the accident and the EMG was the proper waiting period to conduct such a test. Based upon his examination of petitioner, the review of his records and the fact that petitioner returned to work at full duty in 2006 and continued working as such until 2012, Meyer concluded that petitioner's incapacity was caused not by the 2006 accident but, rather, was solely caused by the 2012 incident, which resulted in numerous surgeries on his right knee, a diagnosis of complex regional pain syndrome and required petitioner to still be using crutches at the time of the 2017 examination. John Mazella, an orthopedic surgeon who examined petitioner and reviewed his medical records on behalf of the Retirement System in 2015, similarly concluded that the May 2006 accident was not a competent producing cause of petitioner's disability, citing to the lack of surgical treatment for the 2006 injuries and the fact that petitioner returned to work at full duty six months after the accident. Mazella similarly opined that the 2012 injuries were the sole cause of petitioner's permanent disability.[FN4]
In view of the foregoing, the Comptroller was entitled to credit the rational and fact-based opinions of Meyer and Mazella over the contrary opinion of Modugu in determining that petitioner's disability was not causally-related to the May 2006 accident. Accordingly, inasmuch as substantial evidence supports the Comptroller's determination, it will not be disturbed (see Matter of Dowling v Gardner, 198 AD3d 1056, 1058 [3d Dept 2021], lv denied 37 NY3d 919 [2022]; Matter of Trager v New York State Comptroller, 188 AD3d at 1407; Matter of Studdert v New [*3]York State Comptroller, 163 AD3d 1343, 1346 [3d Dept 2018]). We have considered petitioner's remaining contentions and find them to be without merit.
Clark, Pritzker, Reynolds Fitzgerald and Fisher, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: Although petitioner's employer filed an application for accidental disability retirement benefits on behalf of petitioner based upon the January 2012 incident, petitioner conceded at the outset of the hearing that the 2012 incident did not constitute an accident within the meaning of the Retirement and Social Security Law and informed the Hearing Officer that the only issue to be resolved was whether the 2006 accident was the proximate cause of his disability. Petitioner was awarded performance of duty disability retirement benefits as a result of the January 2012 incident.

Footnote 2: Modugu also testified that the injuries to petitioner's right knee in 2012 contributed to his permanent incapacity.

Footnote 3: Modugu did not testify that any of the other injuries allegedly sustained by petitioner in the 2006 accident were a producing cause of petitioner's incapacity.

Footnote 4: Although the conclusion of Mazella's report includes a reference to petitioner's left wrist injury, which occurred in 2006, as a disabling condition, along with injuries petitioner suffered as a result of the 2012 incident, the reference appears to be inadvertent, as Mazella made no such finding when addressing the wrist injury in his report and unequivocally concluded that the injuries suffered in 2006 did not cause petitioner's disability.